**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION (JACKSON)**

| | |
|---|---|
| **DELTA FUEL COMPANY, LLC**, | |
| Plaintiff, | Case No. 3:25-CV-410-TSL-LGI |
| v. | *Hon. Tom S. Lee* |
| **DELTA UTILITIES, LLC, DELTA UTILITIES MS, LLC, and JOHN DOES 1-10**, | |
| Defendants. | |

## <u>DEFENDANTS DELTA UTILITIES, LLC AND DELTA UTILITIES MS, LLC'S ANSWER AND AFFIRMATIVE DEFENSES</u>

Defendants Delta Utilities, LLC and Delta Utilities MS, LLC ("Delta Utilities" or "Defendants"),[1] by and through the undersigned counsel, hereby answer the Complaint filed by Plaintiff Delta Fuel Company, LLC (the "Delta Fuel" or "Plaintiff"). Delta Utilities denies each and every one of the allegations except to the extent those allegations are specifically admitted below. Delta Utilities specifically responds to the allegations in the Complaint as follows:

### <u>PRELIMINARY STATEMENT</u>

The Mississippi Delta is the land where the Blues began, where rock and roll first thrived, a haven for literary greats like playwright Tennessee Williams, and the present home to a vibrant agricultural and commercial community. Rich in history and entrenched in local culture, the term "Delta" and the region it represents inspire the names of communities, buildings, highways, schools, parks, national forests and refuges, and many businesses. While perhaps the most famous

---

[1] Effective January 10, 2025 and May 29, 2025, the entity Delta Utilities MS, LLC changed its name to Delta Mississippi Gas Company, LLC and the entity Delta Utilities, LLC changed its name to Magnolia Gas Company, LLC, respectively, each doing business as "Delta Utilities."

of these is Delta Air Lines, in the Mississippi and Louisiana region alone, there are *hundreds* of businesses registered with their respective Secretary of States with the word "Delta" in their names. Consumers, especially consumers in Mississippi and Louisiana, observe and interact with Delta-iterated businesses and other designations every day.  The word is everywhere.  Because of its ubiquity, consumers easily recognize that two or more companies using "Delta" in their names are not related simply because of their common overlap.

Plaintiff knows this.  It knows that "Delta" is a common term, especially locally, and it knows that multiple trademarks using "Delta" can and do peacefully coexist.  It is clear that Plaintiff knows this because Plaintiff has said as much in a publicly filed coexistence agreement with another Delta-iterated business likewise in the "energy" field.  Nonetheless, when it comes to Delta Utilities, a perceived deep-pocked defendant, Plaintiff somehow now finds use of "Delta" problematic.  At its heart, this lawsuit is nothing more than a significant overreach by Plaintiff to claim a monopoly over "Delta" and unfairly impede Delta Utilities' ability to operate in the marketplace.

*Delta Utilities*

With headquarters in New Orleans, Louisiana, Delta Utilities began operations in April 2025 through its acquisition of CenterPoint Energy's natural gas utility operations in Louisiana and Mississippi.  Following the acquisition of Entergy's natural gas utilities in Baton Rouge and New Orleans, Delta Utilities now provides valuable and cost-conscious natural gas services to nearly 600,000 customers in Mississippi and Louisiana, retaining hundreds of local employees and creating 200 new jobs.  As a new rate regulated utility, Delta Utilities is keen on introducing itself to its consumers and educating them on the company.  Accordingly, Delta Utilities sent letters and engaged in initiatives aimed at informing the existing utility customers of this change, who Delta

Utilities is, and how it will operate as their new natural gas utility. And despite this large educational outreach—or perhaps because of it—Delta Utilities has not experienced one consumer who mistakenly believed it to be affiliated with Plaintiff.

The image below depicts the territory that Delta Utilities will service, with the blue area representing the legacy CenterPoint service area and the green area representing the legacy Entergy service area.



Public utilities generally operate as natural monopolies due to the immense capital investment required to establish and maintain infrastructure—such as gas pipelines—across expansive geographic areas. The scale and fixed costs involved create insurmountable barriers to entry, rendering competitive market models both economically inefficient and impractical. Regulatory frameworks recognize this reality by granting exclusive operating rights, subject to oversight, to ensure that essential services remain accessible, safe, and fairly priced for the public. Utilities bear a critical responsibility to deliver safe, life-essential services—like natural gas—at a cost accessible to all. Their role demands a natural monopoly, as duplicating infrastructure for competing providers is economically and logistically impractical in regions where nearly every resident depends on continuous, reliable access to these indispensable resources.

As a regulated public utility, Delta Utilities enjoys a gas service monopoly in its Mississippi service areas where it holds a Certificate of Public Convenience and Necessity granted by the Mississippi Public Service Commission, and in competitively-protected Louisiana service areas

where it offers regulated and cost-effective natural gas service. The natural gas industry is highly regulated and maintains a strong focus on safety in all aspects of utility operations. Each year, billions of dollars are spent to enhance America's natural gas infrastructure. As a public utility, Delta Utilities is rate regulated by the Mississippi Public Service Commission, the Louisiana Public Service Commission, and the New Orleans City Council. The service that Delta Utilities provides, the rates that customers pay, and the return on invested equity are regulated by the aforementioned regulators.

Categorically, Delta Utilities does not and cannot have any competitors in its protected service territories. Delta Utilities' potential consumer base is therefore automatically comprised of all persons and entities who are located within its protected service areas, require natural gas services, and can be most cost-effectively serviced by Delta Utilities. Because this consumer base has no choice but to obtain natural gas services from Delta Utilities, consumer confusion regarding the source of their natural gas is very unlikely.

The selection of the Delta Utilities name had nothing to do with Plaintiff, and everything to do with paying homage to the geographic area that it services and that it calls home. Delta Utilities provides its natural gas services under the DELTA UTILITIES word mark and the following composite mark:



*Natural Gas vs. Petroleum Products*

Plaintiff describes itself as a "distributor of petroleum products and derivatives." Natural gas and petroleum (which includes propane) are two very distinct types of energy, and are classified as such by the government, including by both the Federal Energy Regulatory

Commission and the U.S. Energy Information Administration. Importantly, neither can be interchanged for the other. For example, appliances and mechanical equipment designed for natural gas are incompatible with petroleum absent extensive modifications and specific reconfiguration.[2] Because natural gas and propane are delivered at very different pressures and provide vastly different energy densities, the utilization of an incompatible energy type can result in appliance or equipment malfunctions and possibly dangerous conditions. Thus, on the most basic, technical level, natural gas utility providers and petroleum suppliers cannot compete for the same consumers because consumers can only utilize the type of energy that is compatible with their specific appliances and mechanical equipment.

Natural gas and petroleum also differ in their transportation, storage, and use. For example, propane, which Plaintiff allegedly provides or used to provide, is transported and stored in its liquid state in pressurized containers. By storing propane in its liquid state, it becomes significantly more compact. Propane becomes a gas again when a valve is opened to release it from its pressurized container. Local propane dealers fill their propane delivery trucks at bulk terminals. These tank trucks, called bobtails, deliver propane to aboveground storage tanks located outside of homes and businesses. As reflected in the following images, Plaintiff delivers (or used to deliver) propane in this fashion:

---

[2] By way of example, one seeking to convert a propane grill to natural gas may need to replace the regulator, tubing, and burners (effectively all of the innards of the grill) with equipment compatible with natural gas.





Plaintiff also appears to deliver (or used to deliver) petroleum in an aboveground fashion, via trucks:





The average residential propane tank holds between 500 and 1,000 gallons of liquid propane, and it might be refilled several times a year. Propane for barbecuing is sold in smaller cannister tanks available at convenience and hardware stores.

By contrast, Delta Utilities delivers natural gas through natural gas distribution systems (e.g., pipelines) that typically run underground and connect directly to homes and buildings—not via delivery by bobtail trucks or in canisters. Because of the distribution pipeline structure, years of planning, construction, and investment must occur before natural gas can be serviced to a new area, and service territory is generally limited to areas adjacent to existing natural gas distribution lines. In Mississippi, a natural gas utility provider may only service areas where it has an authorizing and exclusive Certificate of Public Convenience and Necessity, while in Louisiana pipelines are typically installed under authorizing franchises with the city or parish and are competitively protected from other utilities. Once installed, the utilities' ability to expand is protected to the extent it can provide service to new customers more cost-effectively than other utilities. It is also for these reasons that natural gas utility providers and petroleum suppliers cannot compete for the same consumers, as only consumers connected to pipelines may purchase natural

gas services.  In some rural areas where there is no distribution system, customers do not have access to natural gas, and commonly rely on propane that can be delivered aboveground by truck.

Natural gas must first be treated at processing plants before it can be put into pipelines. Natural gas processing can be complex and usually involves several steps to remove oil, water, HGLs, and impurities.  The impurities in wellhead natural gas determine the number of stages and the processes required to produce pipeline-quality dry natural gas.  Natural gas transmission pipelines connect gathering systems in producing areas, natural gas processing plants, and other receipt points to the main consumer service areas.  Then, in order to provide natural gas services in Louisiana or Mississippi, a would-be natural gas utility provider must obtain approval from the applicable public service commission or regulator to operate as a public utility and charge rates approved by the applicable regulator.  Obtaining approval is a significant and lengthy process.  The utility must also comply with all applicable pipeline, safety, and environmental regulations.  The high infrastructure cost required to process and provide natural gas services, accompanied by the highly regulated nature of the services, means that unlike propane providers, natural gas utility providers typically enjoy the monopolies that bar any inefficient competition for consumers.

Where available, natural gas is generally considered a convenient and cost-effective option.[3]  Furthermore, Delta Utilities delivers natural gas to customers through a comprehensive, underground infrastructure system that is shielded from natural disasters, hurricanes, severe weather events, and other potential service disruptors.[4]  Therefore, natural gas is reliable by design.

---

[3] "Natural gas has many qualities that make it an efficient, relatively clean burning, and economical energy source." *Natural Gas explained*, U.S. Energy Information Admin., available at https://www.eia.gov/energyexplained/natural-gas/natural-gas-and-the-environment.php (last visited June 28, 2025).

[4] Mississippi is one of the few states with large underground salt caverns capable of storing natural gas and the state has about one-fourth of the nation's salt cavern storage capacity.

About 60% of U.S. homes use natural gas for space and water heating, cooking, and clothes drying.[5]



In sum, the natural gas utility services that Delta Utilities provides are starkly different than the services that Plaintiff provides.

*Plaintiff Delta Fuel*

In contrast to Delta Utilities, Plaintiff is a private company that appears to sell bulk fuel (such as diesel and gasoline), propane, lubricant, and related services in a competitive marketplace to sophisticated entities active in the construction, aviation, energy, trucking, and manufacturing industries. None of Plaintiff's products or services can fulfill a consumer's natural gas requirement because its products, as explained above, cannot be interchangeably used in appliances and mechanical equipment compatible with natural gas. Moreover, Plaintiff is not a public utility and has neither pursued nor obtained any of the approvals necessary to operate as a public utility in any jurisdiction. Even if Plaintiff was hypothetically able to become a public utility, it still could

---

[5] According to the American Gas Association, the natural gas industry employs more than 266,000 Louisianans and more than 27,000 jobs in Mississippi.

not compete with Delta Utilities for consumers due to the monopolistic limitations on competition provided for public utilities under the regulations of each state.

Plaintiff has recently limited its use of the DELTA FUEL brand and branded towards a DELTA360 umbrella brand:



As noted above, Plaintiff is aware that "Delta" is a "diluted" term and that multiple "Delta"–formative marks can coexist without any infringement issues. Indeed, Plaintiff represented to the federal agency responsible for the registration of trademarks, the United States Patent and Trademark Office ("USPTO"), that when "Delta"–formative marks have different terms immediately following the term "Delta," these distinctions are sufficient to avoid consumer confusion. Specifically, in response to the USPTO's refusal to register Plaintiff's application for a DELTA PROPANE mark on account of an existing third-party DELTA LIQUID FUEL mark, Plaintiff submitted a co-existence agreement with the owner of that mark. Therein, Plaintiff agreed that "[e]ven though both marks contain the word 'delta,' the inclusion of the word 'propane' or 'fuel' in Delta Fuel's marks and the inclusion of 'liquid energy' in [the third party's] mark serve as distinguishing features…sufficient to prevent confusion in the marketplace." The USPTO agreed and allowed the DELTA PROPANE mark to register and co-exist with a third-party registration for the DELTA LIQUID FUEL mark.

Seemingly, when it was convenient, Plaintiff had no concerns telling a federal agency that it could co-exist with a company whose mark shares not just "Delta" but "Fuel" as well. Yet, despite that co-existence, Plaintiff somehow now alleges that the DELTA UTILITIES mark, which is different in sight, sound, meaning, and commercial impression, and is used in connection with a completely different business, is problematic. Plaintiff's irreconcilable position is summarized in the table below:

**Table 1. Delta Fuel's Position**

| | |
|---|---|
| **DELTA FUEL** | ✓ |
| **DELTA** LIQUID **FUEL** | ✓ |
| **DELTA** UTILITIES | ✗ |

Plaintiff got it right the first time—marks that share the term "Delta" can co-exist without consumer confusion—and the USPTO agreed. When a trademark application is submitted to the USPTO it undergoes examination and is ultimately assigned to a trademark examining attorney that works at the USPTO to determine whether the application should be allowed to proceed to registration. Part of that examination involves a search of trademark database records and an assessment of whether there is a likelihood of confusion with any existing trademark records. When the examining attorney examined Delta Utilities' trademark applications for DELTA UTILITIES and the composite mark depicted above for potentially confusing marks, she did not cite any of Plaintiff's asserted "Delta"–formative marks as obstacles to registration. Instead, she cited a wholly different Delta utility mark (DELTA CITY) as a potential obstacle—a registered mark which has also peacefully co-existed with Plaintiff's "Delta" brands, presumedly because it also incorporates an additional term—"City." But, ultimately, the USPTO agreed that DELTA UTILITIES can co-exist with DELTA CITY for the same reasons that DELTA UTILITIES can co-exist with DELTA FUEL: consumers are not likely to confuse the marks.

The outcome at the USPTO aligns with Delta Utilities' expectation.  Delta Utilities fully expected that it could adopt and use the Delta Utilities name in good faith.  Delta Utilities knows that it can properly co-exist within the sea of existing "Delta"–formative marks when, as is the case here, it uses a sufficiently distinct trademark (and offers completely different utility services and delivers different goods to consumers).  Consumers in the Delta region and elsewhere are sufficiently sophisticated and reasonable enough to know that the two businesses are not related to one another and provide different services (indeed Plaintiff categorically cannot provide the services that Delta Utilities provides due to the aforementioned infrastructure and public utility authorization requirements associated with the provision of natural gas services).  There is no confusion, no deception, and no unfair competition.

Delta Utilities respectfully submits that it will establish in this action that there is no likelihood of confusion and that all of Plaintiff's claims should be dismissed.

## INTRODUCTION[6]

1.      Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 1 of the Complaint, and therefore denies those allegations.

2.      Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 2 of the Complaint, and therefore denies those allegations.

3.      Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 3 of the Complaint, and therefore denies those allegations.

4.      Delta Utilities admits that it is a Bernhard Capital Partners portfolio company.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 4 of the Complaint.

---

[6] Delta Utilities reproduces the headings in the Complaint for ease of reference.  The inclusion of headings does not constitute an admission, including as to any of the contents of such headings.

5.      Delta Utilities admits the allegations set forth in Paragraph 5 of the Complaint.

6.      Delta Utilities admits that it filed federal trademark applications with the USPTO for (a) DELTA UTILITIES on February 19, 2024, and for (b) for the composite mark below on March 4, 2024.



Delta Utilities further avers that the USPTO examined the applications to identify any confusingly similar marks and allowed both trademark applications to proceed to the next stage of registration without citing any of Plaintiff's trademark registrations.  Delta Utilities admits that both applications were published for opposition in the USPTO's *Official Gazette* on January 28, 2025.

7.      Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 7 of the Complaint, and therefore denies those allegations.

8.      Delta Utilities admits that Plaintiff filed a Consolidated Notice of Opposition with the USPTO's Trademark Trial and Appeal Board ("TTAB") on March 20, 2025.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 8 of the Complaint.

9.      Delta Utilities denies the allegations set forth in Paragraph 9 of the Complaint.

10.     Delta Utilities admits that it (a) informed existing CenterPoint Energy consumers that Delta Utilities acquired CenterPoint Energy's natural gas operations in Mississippi, (b) branded fleet vehicles with the DELTA UTILITIES marks, (c) marketed on its website and social media accounts, and (d) sponsored events.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 10 of the Complaint.

11.     Delta Utilities denies the allegations set forth in Paragraph 11 of the Complaint.

12.     Delta Utilities denies the allegations set forth in Paragraph 12 of the Complaint.

13.     Delta Utilities denies the allegations set forth in Paragraph 13 of the Complaint. Further responding, Delta Utilities asserts that Plaintiff has entered into at least one co-existence agreement with the owner of another DELTA-formative mark (DELTA LIQUID ENERGY) for propane goods, a product that is identical to the products provided by Plaintiff.  In that co-existence agreement, Plaintiff and the third party expressly acknowledge that their respective uses of disclaimed terms such as "fuel," "propane," and "liquid energy," are a key contributor in minimizing the likelihood of confusion between their respective brands.

14.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 14 of the Complaint, and therefore denies those allegations.

15.     Paragraph 15 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 15 of the Complaint.

**PARTIES**

16.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 16 of the Complaint, and therefore denies those allegations.

17.     Effective May 29, 2025, the entity Delta Utilities, LLC changed its name to Magnolia Gas Company, LLC (d/b/a Delta Utilities).  Delta Utilities otherwise admits the allegations set forth in Paragraph 17 of the Complaint.

18.     Effective January 10, 2025, the entity Delta Utilities MS, LLC changed its name to Delta Mississippi Gas Company, LLC (d/b/a Delta Utilities), and its principal place of business is 201 St. Charles Avenue, Suite 3000, New Orleans, LA 70170.  Delta Utilities otherwise admits the allegations set forth in Paragraph 18 of the Complaint.

19.     Paragraph 19 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 19 of the Complaint.

## JURISDICTION AND VENUE

20.     Paragraph 20 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities admits that Plaintiff purports to assert claims in the Complaint for trademark infringement under 15 U.S.C. § 1114 and unfair or deceptive practices arising under the Mississippi Code § 75-24-5 (2024) but Delta Utilities denies that it does so or that the allegations underlying those claims have any merit.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 20 of the Complaint.

21.     Paragraph 21 of the Complaint contains legal conclusions to which no response is required.

22.     Delta Utilities admits that this Court has personal jurisdiction over Delta Utilities.  Paragraph 22 of the Complaint otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 22 of the Complaint.

23.     Paragraph 23 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 23 of the Complaint.

## FACTUAL BACKGROUND

**A.     DELTA FUEL'S WELL-KNOWN MARKS**

24.     Delta Utilities admits that it provides public utility services in Mississippi and Louisiana.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 25 of the Complaint, and therefore denies those allegations.

26.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 26 of the Complaint, and therefore denies those allegations.

27.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 27 of the Complaint, and therefore denies those allegations.

28.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 28 of the Complaint, and therefore denies those allegations.

29.     Delta Utilities admits, that according to Plaintiff's website, Plaintiff has started to market its products under the following brand.



30.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 30 of the Complaint, and therefore denies those allegations.

31.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 31 of the Complaint, and therefore denies those allegations.

32.     Delta Utilities states that Exhibit 1 speaks for itself, and no further response is required.

33.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 33 of the Complaint, and therefore denies those allegations.

34.     Delta Utilities states that Exhibit 2 speaks for itself, and no further response is required.

35.     Delta Utilities admits that Paragraph 35 of the Complaint sets forth a term defined by Plaintiff.

36.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 36 of the Complaint, and therefore denies those allegations.

37.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 37 of the Complaint, and therefore denies those allegations.

**B.     DELTA UTILITIES IS A SOPHISTICATED AND SAVVY INFRINGER**

38.     Delta Utilities denies the allegations set forth in Paragraph 38 of the Complaint.

39.     Delta Utilities admits that it is a portfolio company of Bernhard Capital Partners. The remainder of the allegations set forth in Paragraph 39 of the Complaint pertain to a third party and therefore no response from Delta Utilities is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 39 of the Complaint and expressly denies the suggestion in the allegations that the sophistication of Bernhard Capital Partners should be imputed on Delta Utilities.

40.     Delta Utilities admits that it is a portfolio company of Bernhard Capital Partners. The remainder of the allegations set forth in Paragraph 40 of the Complaint pertain to a third party and therefore no response from Delta Utilities is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 40 of the Complaint.

41.     The allegations set forth in Paragraph 41 of the Complaint pertain to a third party and therefore no response from Delta Utilities is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 41 of the Complaint.

42.     Delta Utilities admits the allegations set forth in Paragraph 42 of the Complaint.

43.     Delta Utilities admits the allegations set forth in Paragraph 43 of the Complaint.

44.     Delta Utilities admits the allegations set forth in Paragraph 44 of the Complaint.

45.     Delta Utilities admits that it is a regulated public utility. Delta Utilities admits that it works with agencies to provide its services safely to the communities it serves.

46.     Delta Utilities admits the allegations set forth in Paragraph 46 of the Complaint.

## C.     DELTA UTILITIES KNEW ABOUT THE DELTA FUEL MARKS PRIOR TO USE

47.     Delta Utilities admits that it filed a federal trademark application with the USPTO for the DELTA UTILITIES word mark on February 19, 2024. Delta Utilities admits that it applied for registration on the Principal Register of the USPTO for the DELTA UTILITIES word mark, Application Serial No. 98410726, for the services "Public utility services in the nature of natural gas distribution" in Class 39. Delta Utilities further responds that the USPTO examined the application, filed on an intent-to-use basis, to identify any confusingly similar marks and allowed the trademark application to proceed to the next stage of the registration process without citing any of Plaintiff's trademark registrations. Delta Utilities admits that the application for DELTA UTILITIES published for opposition in the USPTO's *Official Gazette* on January 28, 2025.

48.     Delta Utilities admits that it filed a federal trademark application with the USPTO for the mark below on February 19, 2024.



Delta Utilities admits that the description of the mark at the USPTO is a mark that "consists of a triangle comprising three stacked sections separated by curved lines with the top section in green, middle section in a lighter blue, and the bottom section in a darker blue. The stylized wording 'DELTA' and 'UTILITIES' are stacked to the right of the design in dark blue." Delta Utilities admits that Delta Utilities applied for registration on the Principal Register for Application Serial No. 98432519, for the services "Public utility services in the nature of natural gas distribution" in Class 39. Delta Utilities further responds that the USPTO examined the application, filed on an

intent-to-use basis, to identify any confusingly similar marks and allowed the trademark application to proceed to the next stage of the registration process without citing any of Plaintiff's trademark registrations. Delta Utilities admits that the application published for opposition in the USPTO's *Official Gazette* on January 28, 2025.

49.    Delta Utilities admits that Plaintiff requested and received extensions to oppose both of Delta Utilities' applications for the DELTA UTILITIES word mark and the mark below on February 27, 2025.



50.    Delta Utilities admits that Ryan King called Adam Vegas on March 10, 2025 to discuss Plaintiff's forthcoming opposition.

51.    Delta Utilities admits that Taryn Brown and Devin Ricci met with Jeffrey Phillips on March 19, 2025 via Microsoft Teams to discuss Plaintiff's forthcoming opposition.

52.    Delta Utilities admits that Plaintiff filed a consolidated opposition proceeding at the TTAB against both Delta Utilities' applications for the DELTA UTILITIES word mark and the mark below on March 20, 2025.



**D.    DELTA UTILITIES DECIDED TO WILLFULLY INFRINGE ANYWAY**

53.    Delta Utilities denies the allegations set forth in Paragraph 53 of the Complaint.

54.    Delta Utilities denies the allegations set forth in Paragraph 54 of the Complaint.

55.    Delta Utilities denies the allegations set forth in Paragraph 55 of the Complaint.

56.    Delta Utilities denies the allegations set forth in Paragraph 56 of the Complaint.

E. **DELTA UTILITIES ENGAGES IN AN IMMEDIATE ADVERTISING AND SOCIAL MEDIA BLITZ**

57.     Delta Utilities admits the allegations set forth in Paragraph 57 of the Complaint.

58.     Delta Utilities admits that it sent mail to existing CenterPoint Energy consumers in Mississippi and Louisiana concerning the transition of services from CenterPoint Energy to Delta Utilities.  Delta Utilities states that the image underneath Paragraph 58 of the Complaint speaks for itself, and no further response is required.

59.     Delta Utilities admits that it advertised on billboards and branded fleet vehicles with the DELTA UTILITIES marks.  Delta Utilities states that the images underneath Paragraph 59 of the Complaint speak for themselves, and no further response is required.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 59 of the Complaint.

60.     Delta Utilities admits that it has used the phrase "a leading natural gas utility with a focus on safe, dependable service to customers" or some variation of that phrase on its website and social media accounts.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 60 of the Complaint.

61.     Delta Utilities admits that it promotes the DELTA UTILITIES brand on social media.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 61 of the Complaint.

62.     Delta Utilities admits that it sponsored the following events: Mudbug Madness, New Orleans Home & Garden Show, Zurich Classic of New Orleans PGA Golf Tournament, New Orleans Jazz & Heritage Gala, Live After Five Concert, YLC Wednesday, and the French Quarter Festival.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 62 of the Complaint.

63.     Delta Utilities admits that it uses traditional advertising methods (e.g., billboards and mailings), internet advertising, and social media advertising.  Except as so admitted, Delta Utilities denies the allegations set forth in Paragraph 63 of the Complaint.

## F.    THERE IS A VERY HIGH LIKELIHOOD OF FORWARD AND REVERSE CONFUSION

64.     Delta Utilities denies the allegations set forth in Paragraph 64 of the Complaint.

65.     Delta Utilities denies the allegations set forth in Paragraph 65 of the Complaint. Further responding, Delta Utilities avers that Plaintiff has entered into at least one co-existence agreement with the owner of another Delta-formative mark (DELTA LIQUID ENERGY) for propane goods, a product that is identical to the products provided by Plaintiff.  In that co-existence agreement, Plaintiff and the third party expressly acknowledge that their respective uses of disclaimed terms such as "fuel," "propane," and "liquid energy," are a key contributor in minimizing the likelihood of confusion between their respective brands

66.     Paragraph 66 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 66 of the Complaint.

67.     Delta Utilities admits that its applications are limited to utility services in the nature of natural gas distribution in Class 39.  Delta Utilities denies the remaining allegations set forth in Paragraph 67 of the Complaint.  Further responding, Delta Utilities expressly denies that natural gas is the equivalent of methane, or vice versa.

68.     Delta Utilities denies the statement, "Alternatively, even if limiting the comparison to natural gas distribution and liquid propane/LPG distribution, these services are also highly similar."  Delta Utilities lacks sufficient knowledge or information to form a belief as to the

remaining allegations set forth in Paragraph 68 of the Complaint, and therefore denies those allegations.

69.     Delta Utilities denies the allegations set forth in Paragraph 69 of the Complaint.

70.     Delta Utilities denies the allegations set forth in Paragraph 70 of the Complaint.

71.     Paragraph 71 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 71 of the Complaint.

72.     Paragraph 72 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 72 of the Complaint.

73.     Paragraph 73 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Delta Utilities denies the allegations set forth in Paragraph 73 of the Complaint.

## COUNT I
## Federal Trademark Infringement
## (15 U.S.C. § 1114)

74.     Delta Utilities incorporates by reference its responses to Paragraphs 1 through 73 as if set forth fully herein.

75.     Delta Utilities admits that, according to the USPTO records, Plaintiff is the owner of record of certain trademark registrations.  The details of the registrations are in the public record, speak for themselves, and require neither admission nor denial. Delta Utilities lacks sufficient knowledge or information to form a belief as to the remaining allegations set forth in Paragraph 75 of the Complaint, and therefore denies those allegations.

76.     Delta Utilities lacks sufficient knowledge or information to form a belief as to the allegations set forth in Paragraph 76 of the Complaint, and therefore denies those allegations.

77.    Delta Utilities denies the allegations set forth in Paragraph 77 of the Complaint.

78.    Delta Utilities denies the allegations set forth in Paragraph 78 of the Complaint.

79.    Delta Utilities denies the allegations set forth in Paragraph 79 of the Complaint.

80.    Delta Utilities denies the allegations set forth in Paragraph 80 of the Complaint.

81.    Delta Utilities denies the allegations set forth in Paragraph 81 of the Complaint.

82.    Delta Utilities denies the allegations set forth in Paragraph 82 of the Complaint.

83.    Delta Utilities denies the allegations set forth in Paragraph 83 of the Complaint.

84.    Delta Utilities denies the allegations set forth in Paragraph 84 of the Complaint.

## COUNT II
### Unfair Competition and Deceptive Trade Practices Under Mississippi State Law
### (MS Code § 75-24-5 (2024))

85.    Delta Utilities incorporates by reference its responses to Paragraphs 1 through 84 as if set forth fully herein.

86.    Delta Utilities denies the allegations set forth in Paragraph 86 of the Complaint.

87.    Delta Utilities denies the allegations set forth in Paragraph 87 of the Complaint,

88.    Delta Utilities denies the allegations set forth in Paragraph 88 of the Complaint.

89.    Delta Utilities denies the allegations set forth in Paragraph 89 of the Complaint.

90.    Delta Utilities denies the allegations set forth in Paragraph 90 of the Complaint.

91.    Delta Utilities denies the allegations set forth in Paragraph 91 of the Complaint.

## JURY DEMAND

92.    Paragraph 92 contains a jury demand to which no response is required.  Delta Utilities demands a trial by jury on all issues so triable.

## ANSWER TO PRAYER FOR RELIEF

Delta Utilities denies that Plaintiff is entitled to any recovery or relief in connection with the allegations set forth in the Complaint, including, but not limited to, the requested relief set forth

in Plaintiff's Prayer for Relief.

## GENERAL DENIAL

Delta Utilities denies each and every allegation of the Complaint not specifically and expressly admitted herein.

## ADDITIONAL DEFENSES

As affirmative, separate, and other defenses to the Complaint asserted against Delta Utilities, Delta Utilities states as follows without assuming the burden of proof on matters where it has no such burden.  In doing so, Delta Utilities specifically reserves the right to restate, re-evaluate, or recall any defenses.

## FIRST ADDITIONAL DEFENSE

The Complaint fails to state a claim upon which relief may be granted.  Plaintiff fails to allege a plausible claim for trademark infringement, unfair competition, deceptive trade practices, or a claim pursuant to Mississippi Code § 75-24-5, as Plaintiff fails to allege a lack of likelihood of confusion as well any harm given the lack of marketplace competition.

## SECOND ADDITIONAL DEFENSE

Some or all of the relief sought by Plaintiff is barred because Plaintiff has failed to establish irreparable injury.  Among other things, Plaintiff has long co-existed with other businesses that use "Delta" –formative marks, and Plaintiff does not compete with Delta Utilities.

## THIRD ADDITIONAL DEFENSE

Plaintiff's claims are barred, in whole or in part, because infringement, if any, was innocent.  Among other things, Delta Utilities adopted a mark with a term ("Delta") that is ubiquitous in the marketplace and in the specific region where Delta Utilities operates.

## FOURTH ADDITIONAL DEFENSE

Plaintiff is estopped, including in the form of prosecution estoppel, from asserting rights

which it discarded to acquire its trademarks.  Specifically, when Plaintiff applied to register its DELTA PROPANE trademark, the application was rejected on February 6, 2018, based on the prior existence of DELTA LIQUID ENERGY for identical and overlapping goods and services. Plaintiff entered into a co-existence agreement with the owner of DELTA LIQUID ENERGY, which Plaintiff submitted to the USPTO on March 15, 2018 as evidence of no likelihood of confusion.  In formulating the co-existence agreement, Plaintiff agreed that (1) its customers were sophisticated, and that (2) the use of secondary, descriptive terminology such as "fuel," "propane," and "liquid energy," in its and the third party's marks help prevent consumer confusion.  Plaintiff is estopped from regaining now the breadth of rights related to the DELTA brand which Plaintiff conceded and gave up in the process of acquiring the brand.  Plaintiff should likewise be estopped from taking positions in this action inapposite to the positions it took to obtain its trademarks.

## **ADDITIONAL DEFENSES**

Delta Utilities further reserves the right to supplement and amend its answer to set forth specific facts upon which these and other affirmative defenses are based as discovery is undertaken and the evidence is developed, as may be appropriate in this case.

WHEREFORE, Delta Utilities requests that the Complaint be dismissed and that the Court grant Delta Utilities its costs of suit and reasonable attorneys' fees incurred in this action, and such other relief as this Court deems just and proper.

Dated: July 3, 2025

Respectfully submitted,

**DELTA UTILITIES, LLC AND DELTA
UTILITIES MS, LLC**[7]

By:     */s/ R. David Kaufman*
        One of Its Attorneys

OF COUNSEL:

R. David Kaufman, MSB # 3526
Karen E. Howell, MSB # 102243
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone:     (601) 948-3101
Facsimile:     (601) 960-6902
dkaufman@brunini.com
khowell@brunini.com
ACTIVE\1621242111

---

[7] Effective January 10, 2025 and May 29, 2025, the entity Delta Utilities MS, LLC changed its name to Delta Mississippi Gas Company, LLC and the entity Delta Utilities, LLC changed its name to Magnolia Gas Company, LLC, respectively, each doing business as "Delta Utilities."